**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In re:** | § |
| | § **Chapter 13** |
| | § |
| **Vijaya Mrinalini Gera,** | § **Case No. 26-40504** |
| | § |
| **Debtor** | § |
| | § |
| | § |

**RESPONSE IN OPPOSITION TO DEBTOR'S
MOTION FOR SANCTIONS AND AWARD OF ACTUAL DAMAGES, LOST INCOME,
COSTS, AND PUNITIVE DAMAGES AGAINST PENNYMAC LOAN SERVICES, LLC
FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY AND FAILURE TO
DISCLOSE POST-PETITION FEES UNDER RULE 3002.1 PURSUANT TO 11 U.S.C.
362(K) AND FED. R. BANKR. P. 3002.1**

PennyMac Loan Services, LLC ("PennyMac"), a secured creditor in the above-styled Chapter 13 case, hereby files this Response in Opposition (the "Response") to the Motion for Sanctions filed by Debtor Vijaya Mrinalini Gera (the "Debtor") [Dkt. No. 132] (the "Motion"). In support of this Response, PennyMac respectfully states as follows:

**INTRODUCTION**

1. Debtor's Motion is without merit and should be denied in its entirety. The Motion rests on a fundamental misunderstanding of the scope of the automatic stay under 11 U.S.C. § 362(a). The fees at the center of the Debtor's Motion relate to charges incurred prior to the filing of the Debtor's bankruptcy petition. The fact that these charges were posted to the Debtor's account after the Petition Date does not transform them into violations of the automatic stay. Furthermore, courts have consistently held that the mere posting of prepetition charges to a debtor's account postpetition for internal recordkeeping purposes, without any accompanying collection activity, does not violate any provision of the Bankruptcy Code.

2.     For the avoidance of doubt, PennyMac took prompt and appropriate action upon receiving notice of the Debtor's bankruptcy filing: all collection actions against the Debtor were immediately ceased, and the pending foreclosure sale was cancelled.  Nothing in PennyMac's postpetition conduct constitutes an act to collect, assess, or recover a prepetition claim against the Debtor.  Therefore, the Debtor has failed to meet her burden of establishing a willful violation of the automatic stay.

## FACTUAL BACKGROUND

3.     On or about October 11, 2024, Debtor executed a promissory note payable to PennyMac in the original principal amount of $332,000.00 (the "Loan").  The Note is secured by a first priority lien Deed of Trust on the real property located at 321 Pepperwood St., Coppell, Texas 75019 (the "Property").

4.      Prior to the Petition Date, the Debtor defaulted on the Loan, and the Property was set for a foreclosure sale on May 5, 2025.  The May 5, 2025 foreclosure was subsequently cancelled after PennyMac received sufficient funds from the Debtor to reinstate the Loan. However, the Debtor again failed to make required payments. The Property was posted for foreclosure a second time on January 16, 2026, with a foreclosure sale scheduled for March 3, 2026.

5.     On February 13, 2026 (the "Petition Date"), the Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code.  Upon receiving notice of the filing, PennyMac promptly suspended the foreclosure proceedings and canceled the scheduled foreclosure sale.

6.     The fees that are the subject of the Debtor's Motion appear on the Debtor's March 4, 2026 account statement (the "March Statement").  Critically, the March Statement included a

conspicuous notice that it was not an attempt to collect a debt against the Debtor personally, but was sent solely for informational and compliance purposes.

7.      On April 7, 2026, PennyMac filed its proof of claim in the amount of $346,841.62 [Claim No. 12].

8.      The foreclosure fees and costs assessed to the Debtor's account after the foreclosure proceedings were suspended were incurred for services rendered prior to the foreclosure suspension, and critically, prior to the Petition Date.

## ARGUMENT

### A.      *The Automatic Stay Does Not Prohibit Charges for Prepetition Services*

9.      The relevant inquiry under 11 U.S.C. § 362(a) is not merely when a charge was posted to an account, but whether the underlying service or obligation was incurred before or after the petition date.   The Debtor's Motion relies exclusively on the posting dates of the charges at issue as purported evidence of an automatic stay violation.   This reasoning is legally flawed.   The mere posting of fees to a debtor's account for recordkeeping purposes, without any accompanying collection effort, does not violate the automatic stay or any other provision of the Bankruptcy Code.   *See, e.g.*, *In re Thompson*, 351 B.R. 402 (Bankr. N.D. Miss. 2006)(holding that a creditor's mere act of posting charges to a debtor's account for recordkeeping purposes, standing alone, does not violate any provision of the Bankruptcy Code); *Sullivan v. First Horizon Home Loan (In re Sullivan)*, 2003 Bankr. LEXIS 2091, at *2 n.1 (Bankr. E.D. Pa. Nov. 21, 2003)("Neither the internal posting of fees to an account, nor their inclusion on a payoff statement implicate the automatic stay because neither is an act or effort to collect the fees.").

10.      Moreover, the transmittal of the March Statement does not constitute a violation of the automatic stay.   Courts across multiple circuits have held that the sending of informational account statements, standing alone, does not run afoul of the automatic stay.   *See, e.g.*, *In re*

*Knowles*, 442 B.R. 150, 161 (1st Cir. BAP 2011)(sending an annual tax statement and a statement listing current payment did not violate the stay); *In re Zotow*, 432 B.R. 252, 258 (9th Cir. BAP 2010)(sending a notice of amount of debt and increase in postpetition escrow deposits without payment coupon or envelope did not violate the stay); *In re Schatz*, 452 B.R. 544, 550 (Bankr. M.D. Pa. 2011)(sending a statement listing current payment, balance, and address for payment did not violate stay).  The March Statement at issue here falls squarely within this line of authority: it was an informational statement, expressly disclaimed as a collection attempt, and therefore cannot form the basis of a stay violation.

**B.**      ***The Debtor Has Not Established a Willful Violation of the Automatic Stay***

11.      The Debtor has failed to establish the elements of a "willful violation" of the automatic stay necessary to support an award of sanctions under 11 U.S.C. § 362(k).  "A willful of the automatic stay occurs when a 'creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it."  *In re Defeo*, 635 B.R. 253, 262 (Bankr. D.S.C. 2022)

12.      The Fifth Circuit has articulated a three-part test for determining whether a willful violation of the automatic stay has occurred. All three elements must be proven: (1) the alleged violator must have known of the existence of the stay; (2) its acts must have been intentional; and (3) its acts must have violated the stay.  *Repine v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008)(citing *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005)).  The burden of proving each of these elements by a preponderance of the evidence falls squarely on the Debtor.  *Gates v. RAC Acceptance Texas, LLC (In re Gates)*, 621 B.R. 129, 136 (Bankr. W.D. Tex. 2020).

13.     The Debtor cannot satisfy her burden.   As demonstrated above, PennyMac's actions—posting prepetition charges for recordkeeping purposes and sending an informational account statement with an express disclaimer—do not constitute violations of the automatic stay. Because there is no underlying stay violation, the Debtor's claim for sanctions necessarily fails at the third element.   Furthermore, PennyMac's immediate cessation of collection activity upon learning of the Debtor's bankruptcy filing affirmatively demonstrates that PennyMac did not act with the intent to violate the stay, negating the second element as well.

**C.     *The Debtor Was Not Damaged by Any Alleged Violation of the Automatic Stay***

14.     Even if the Court were to find that a willful violation of the stay occurred, in order to recover damages under § 362(k), the Debtor must also prove that she suffered damages resulting from the action.  *In re Defeo*, 635 B.R. at 262.   In the Motion, the Debtor alleges she suffered lost professional income at $160.00 an hour for a total of $6,720.00.   However, the majority of her timesheet in support of her lost wages argument relates to matters that are not connected to the alleged stay violation.   This includes drafting a claim objection, drafting a response to PennyMac's plan objection, and preparing for a confirmation hearing that did not go forward on April 22, 2026.

15.      As a general principle, actual damages under 11 U.S.C. § 362(k) "must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." *In re Nixon*, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009).   "[T]he party seeking damages . . . bears the burden of proving that damages were actually incurred.   Where no injury results from the violation . . ., an award of damages is clearly inappropriate.'"  *In re Voll*, 512 B.R. 132, 138 (Bankr. N.D.N.Y. 2014).   Here, there has been no willful stay violation; therefore, an award of damages for alleged lost income is not appropriate and should be denied.

## CONCLUSION

16.     For the foregoing reasons, PennyMac respectfully requests that this Court deny the Debtor's Motion for Sanctions in its entirety.  PennyMac further requests that the Court award PennyMac any other and further relief as the Court deems just and proper.

Dated: May 13, 2026

By: */s/ Keith M. Aurzada*
Keith M. Aurzada (SBN 24009880)
Taylre C. Janak (SBN 24122751)
REED SMITH, L.L.P.
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Telephone:  469.680.4200
Facsimile:   469.680.4299
Email:kaurzada@reedsmith.com
tjanak@reedsmith.com

**Attorneys For PennyMac Loan Services, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2026, a true and correct copy of the above foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service through same.  In addition, a copy of the foregoing was served by United States First Class Mail to all parties listed on the Debtor's master mailing list (matrix) as constituted by the Court on the date hereof.

*/s/ Taylre C. Janak*
Taylre C. Janak